[Martin v. King.]

# Martin *v.* King.

*Action for Money Had and Received, under Common and Special Counts.*

1. *Waiver of trial by jury; agreement for, on former trial.*—A written agreement in a civil cause, entered into by the parties or their attorneys of record, submitting the cause to the decision of the court without the intervention of a jury (Code, § 3029), being in abrogation of a valuable constitutional right and privilege, will not be construed to be binding on another trial at a subsequent term; particularly where a new party, in the meantime, has been introduced by amendment.

2. *Erasure or alteration in record offered in evidence.*—When a record, or other written instrument offered in evidence, presents the appearance of an erasure or alteration, and there is ground of suspicion as to it, whether shown by inspection or by extrinsic evidence, the party offering it is required first to remove the suspicion by explaining the erasure or alteration; but, where the erasure or alteration bears no such ear-mark of fraudulent intent—as in this case, where the date of a will admitted to probate appears to have been changed from 1875 to 1873, and the record elsewhere shows that the testator died prior to 1875—the better doctrine is, that the change or correction will be presumed to have been made at the time the instrument was executed.

3. *Probate of will, and revocation thereof, in Louisiana.*—A proceeding to revoke the probate of a will, like an application for its probate, is a proceeding *in rem;* and notice thereof to non-resident persons who are interested must, of necessity, be constructive, as authorized by law; and under the laws of Louisiana, as proved in this case, this constructive notice is given by the appointment of a *curator* to represent and protect the interests of such non-residents.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

The record in this case shows, that two separate actions were commenced on the 29th December, 1877, in favor of Mrs. Mary Ann King, a married woman, residing in Ohio; one of said actions being against Almira A. Martin, and the other against Josephine Martin, both of whom were residents of said county of Mobile.    The two actions involved the same facts and issues, and were tried and submitted together.    In each action, the plaintiff sued to recover money alleged to have been had and received by the defendant, to and for the use of the plaintiff. The plaintiff was a surviving sister of one John Martin, who was a resident citizen of Louisiana at the time of his death, and who died at Bladen Springs, Alabama, in July, 1875; and the defendants were nieces of said John Martin.    The money claimed and sued for was assets of the estate of said John Mar-

[Martin v. King.]

tin, and was received by the defendants as "universal legatees" under a will which was admitted to probate in the Second District Court of New Orleans, and of which one J. P. Vairien was appointed the executor; and the plaintiff claimed a portion of the money so received by the defendants, as her distributive portion of the estate, on the ground that the probate of said supposed will had been revoked by the same court which granted it, and that the decedent in fact died intestate. On the first trial, the cause having been submitted to the court for decision without the intervention of a jury, by written agreement entered of record (Code, § 3029), the court rendered judgment for the plaintiff in each case; but the judgment was reversed by this court on appeal, on the ground that the plaintiff's husband ought to have been joined with her as a party plaintiff, and the cause was remanded.—*King v. Martin*, 67 Ala. 177.

After the remandment of the cause, the complaint was amended, by joining the plaintiff's husband as a co-plaintiff with her, and adding a special count claiming the money sued for as Mrs. King's distributive share of the estate of her said deceased brother; and issue was joined on the plea of the general issue. The defendants also pleaded two special pleas, each averring that they received the money, not for the use and benefit of the plaintiff, but as their own absolute property, under an order and decree of the Second District Court of New Orleans; and there was a replication to these special pleas, averring the setting aside and cancellation of said order and decree; to which replication a demurrer was interposed, but overruled. On the trial, the parties having announced themselves ready, the defendants demanded and insisted on a trial by jury; but the plaintiffs insisted that the agreement entered into at the former trial was still binding, and that the cause should be tried by the court without the intervention of a jury. The court held that the agreement was still binding, and proceeded to try the cause without the intervention of a jury; to which ruling and decision an exception was duly reserved by the defendants.

"On the trial," as the bill of exceptions further states, "the plaintiffs offered in evidence a paper purporting to be a transcript of the record of the proceedings of the Second District Court of New Orleans, Louisiana, in a certain cause wherein Mary Ann King was petitioner, against John P. Vairien, Josephine Martin, and Almira A. Martin, as defendants; which was a suit, or proceeding, to annul a will of John Martin, alleged to have been probated in said court, and to annul the orders and decrees of said court putting Josephine and Almira A. Martin in possession of his said estate. In and by said transcript it appeared, on pages two (2) and thirty-three (33) thereof, that an erasure and change had been made in the description

[Martin v. King.]

of the year of the making of the said will sought to be set aside, whereby the year 1875 was evidently changed to 1873, and apparently in a different handwriting, and with different pen and ink; which original record or transcript is, by the order of said Circuit Court, in accordance with the rule of practice (No. 20) in such case made and provided, hereunto attached as an exhibit, for the inspection of the Supreme Court. When plaintiffs offered said transcript in evidence, the defendants objected to its admission, and moved to exclude it unless and until plaintiffs should first explain said manifest alteration of the record; which objection the court overruled, and admitted said record as evidence, showing the date aforesaid to be 1873, when the original date, as written in said transcript, was 1875; to which ruling, admitting said record as evidence without explanation of said apparent alteration, defendants then and there excepted.

" Defendants objected to the admission of said record as evidence, also, for the further reason, that the same was an exemplification of the proceedings in a suit brought by said Mary Ann King against said J. P. Vairien and these defendants, to vacate and annul the probate of the will of said John Martin, under which defendants received said Martin's estate, and the orders under which defendants had received part of said property as legatees under the will of said Martin, and brought the same into this State; and that in and by said record it nowhere appeared that any personal service of process in said cause had been made on these defendants, nor any attachment or other process levied on their property; nor that they, or either of them, had any property whatever in the State of Louisiana at the time of the bringing of said suit; nor that they, or either of them, had appeared in said suit, either in person or by attorney; but that a *curator ad hoc* had been appointed to represent these defendants as non-residents, by said Louisiana court, on plaintiff's motion in said court. Wherefore defendants objected to the introduction of said transcript as evidence against them, and claimed that said proceedings were not binding on them, but were, as to them, *res inter alios acta*. But the court overruled said objection, and admitted said transcript as evidence; to which ruling and decision defendants excepted.

" There was evidence, as appeared by said transcript, and by the depositions of John P. Vairien and Mary Ann King, introduced by the plaintiffs, that plaintiffs are husband and wife, and reside in Ohio, and have resided there for more than twenty years last past; and that defendants held, and had and received the money sued for, as legatees of John Martin, deceased, under the will made in 1873, and duly probated in Louisiana, and which was afterwards annulled and cancelled in the Supreme Court of said State; and that said Martin was

[Martin v. King.]

domiciled in Louisiana at the time of his death, and had been for twenty years prior thereto; and there was evidence, also, showing the heirship of said Mary Ann King to the amount of one-third of said Martin's estate, if he died intestate, and the receipt by the defendants, on the 24th August, 1875, of one-half of $6,625 each, of the moneys of said estate, from the said executor, under the decree of said court in which said will was probated; and there was evidence also, by said transcript, showing the proceedings had in said District Court, the annulment of the said decree of probate, and the order putting said defendants in possession of said estate. The plaintiff introduced in evidence, also, the laws of Louisiana contained in the Civil Code, with leave to each party to read from the same all articles therein applicable to their case; and also the following Reports of the Supreme Court of Louisiana: 6 La. Rep. 406; 12 La. Ann. 558; 15 La. 527; 8 La. 231; 2 La. 303; 2 La., N. S. 475; 8 La. Ann. 431; 1 La. Ann. 171; 2 La. Ann. 562. Plaintiffs introduced in evidence, also, the statute laws of Ohio, showing that the money sued for, if recovered, was the statutory separate estate of the said Mary Ann King. This being all the evidence, the court thereupon gave judgment for the plaintiffs;" to which ruling and judgment the defendants excepted.

The refusal of a trial by jury, the several rulings of the court on the evidence, and the judgment of the court, are now assigned as error.

H. PILLANS, and OVERALL & BESTOR, for appellants.—(1.) The right to a trial by jury is a valuable constitutional privilege, which can not be denied or abridged, except on the clearest legal grounds.—*Stedham v. Stedham*, 32 Ala. 525; *United States v. Rathbone*, 2 Paine, C. C. 578. By the words of the statute (Code, § 3029), a trial by jury may be waived, " whenever the parties, or their attorneys of record, file a stipulation in writing" to that effect; but this statute must receive a strict construction. An agreement waiving a trial by jury, as in this case, is a mere incident of the particular trial, like an agreement as to the testimony of an absent witness; and has fulfilled its purpose when that trial is at an end. Particularly must this be the case, when a new party is afterwards introduced by amendment, who certainly would not be bound by such prior waiver.—*Benbow v. Robbins*, 72 N. C. 422; *Gage v. Nat. Bank*, 86 Illinois, 371. (2.) The transcript offered in evidence contained manifest erasures and alterations, in handwriting and ink different from the body of the record; and these ought to have been explained, before the record was admitted in evidence.—1 Greenl. Ev. § 564, 13th ed.; *Connally v. Spragins*, 66 Ala. 258; *Newcomb v. Presbrey*, 8 Metc. 406. (3.) The decree of the Louisiana court,

[Martin v. King.]

annulling the probate of Martin's will, was not admissible evidence against the defendants here, who were not before the court as parties, not having appeared, and not having been served with process.—*Pennoyer v. Neff*, 5 Otto, 714; *Boswell v. Otis*, 9 How. U. S. 336. That such a proceeding is not *in rem*, was expressly decided in *Gaines v. Fuentes*, 2 Otto, 10–20.

FAITH & CLOUD, *contra*.—(1.) The court properly enforced the written agreement waiving a trial by jury.—*Sawyer v. Patterson*, 12 Ala. 275; *Baird v. Mayor*, 74 N. Y. 382; *Bamberger v. Terry*, 13 Otto, 40; *Supervisors v. Kennicott*, 13 Otto, 554; *Kearney v. Case*, 12 Wallace, 275; *Phillips v. Moore*, 10 Otto, 208; *Bruner v. Marcum*, 50 Mo. 405. (2.) As to the admission of the transcript as evidence, the former decision in this case is conclusive.—*King v. Martin*, 67 Ala. 177. The alteration of a date explains itself, and makes the record consistent. If the transcript was not correct, the error should have been shown by the production of another, duly authenticated. *Carroll v. Pathkiller*, 3 Porter, 279. That the transcript was *prima facie* correct, see *Woodbridge v. Austin*, 4 Amer. Dec. 740. (3.) In the proceeding to annul the probate of the will, the defendants were represented by a *curator* appointed by the court, according to the law of Louisiana; and they are concluded by the decree.—La. Civil Code, Art. 50–57, 1204–1213; *David v. Cabouret*, 1 La. Ann. 171; *Tarleton & Pollard v. Johnson*, 25 Ala. 311; *Hunt v. Acre*, 28 Ala. 580; 2 Brick. Digest, 148, § 236. (4.) The judgment of the court is not revisable.—*Norris v. Jackson*, 9 Wallace, 125.

SOMERVILLE, J.—The right of trial by jury is a constitutional one, secured by the fundamental law in all cases, civil as well as criminal.—Const. 1875, Art. I, § 12. It is a right, however, in the nature of a privilege, and may be waived in certain cases authorized by law. The statutes of this State provide, that "an issue of fact in a civil case, in a court of common-law jurisdiction, may be tried and determined by the *court*, without the intervention of the jury, whenever the parties, or their attorneys of record, file a stipulation in writing with the clerk of the court, *waiving a jury*."—Code of 1876, § 3029.

Upon the first trial of this cause, in the court below, the attorneys entered into such a written stipulation, and the trial had was accordingly without the intervention of a jury. The only plaintiff to the suit, at that time, was Mary Ann King, one of the present appellees. Upon reversal of the cause in this court, her husband, Henry W. King, was joined as co-

[Martin v. King.]

plaintiff with her upon the second trial. The question is, whether the defendants in the *second trial* are bound by the agreement to waive a jury, entered into upon the first trial. It is our judgment, that they are not concluded by such waiver. The agreement, being one in abrogation of a valuable constitutional privilege, must, for this reason, be strictly construed. It would require a most liberal and enlarged construction, to extend its operation beyond the particular trial apparently contemplated by it. It may be that litigants would be willing for the particular judge who presides at one trial to act as both judge and jury, and be entirely unwilling to risk his successor who might sit in judgment upon their rights at a subsequent trial. The parties to the suit, moreover, are not identical with those to the agreement. The first suit was one by the wife alone. The second, or present suit, has by amendment become one by both the husband and wife. The new party introduced is certainly not bound by it; and being without reciprocity, it would be inequitable to construe it to be only unilaterally obligatory. It required, in our opinion, a new agreement to debar the appellants of their right of trial by jury, and the court erred in not so ruling.—*Benbow v. Robbins*, 63 N. C. 422.

It is objected, that the transcript of the proceedings of the Louisiana court was improperly admitted in evidence, because of certain appearances indicating the alteration in two parts of the record of the date of the testator's will, changing it from November 18th, 187*5*, to the same date in 187*3*. It is true that, if an instrument, or record, presents the appearance of having been altered, and any ground of suspicion is presented, either by an inspection of it, or by extrinsic evidence, the party proposing to offer it in evidence is required first to remove the suspicion, by accounting for the alteration. But, where the alteration bears no such ear-mark of fraudulent intent, it will be presumed to have been made contemporaneously with the execution of the instrument, or the making of the record. Such, at least, seems to be the better doctrine, being based upon the more charitable maxim, that the law never presumes a fraud.—1 Greenl. Ev. § 564; *Crabtree v. Clark*, 7 Shep. 337; *Bailey v. Taylor*, 11 Conn. 531.

The correction of the date of the will in question presents no semblance of wrongful intent. So far from being suspicious in its nature, it but renders the record the more harmonious in its various parts, and rescues it from the imputation of both inconsistency and absurdity. When the cause was last before us, we observed, on an objection taken to a misdescription in the date of the will, as follows: "The pleadings all clearly show the purpose of the suit. The will is set out *in hæc verba*, and is described as dated November 18, *1873*. The

[Martin v. King.]

` subsequent misdescription, in the judgment of the court, of the *year* in which the will was executed, stating it to be *1875*, instead of *1873*, is a *clerical error* manifest on the face of the proceedings, and is rendered more plain and certain, if possible, by the established fact, apparent from the record, that the testator died prior to the year 1875."—*King v. Martin*, 67 Ala. 181. As we then said, such a record may be said to correct itself, and we so construe it.

It is not denied that the proceeding in Louisiana, by which the will of the decedent, John Martin, was probated, was a proceeding in the nature of one *in rem:* yet it is insisted that the petition to revoke the probate was a suit *inter partes*, because the appellants had come into possession of property under the will. A judgment *in rem* has, among many other definitions, been said to be, "an adjudication upon the *status* of some particular subject-matter, by a tribunal having competent authority for that purpose;" or, in other words, "a solemn declaration proceeding from an accredited quarter, concerning the *status* of the thing adjudicated upon, which very declaration operates accordingly upon the *status* of the thing adjudicated upon, and, *ipso facto*, renders it such as it is thereby declared to be."—2 Smith's Lead. Cases, pp. 585–6; Freeman Judg. § 606. In such cases, the only practicable service as to non-residents must be constructive notice, the whole doctrine of which is the creature of necessity. Without its aid, the arm of every court would be paralyzed in its efforts to do justice, by the simple election of litigants to evade its process by becoming fugitives from its territorial jurisdiction. There is nothing unreasonable in the view, that one who acquires property under the terms of a probated will, takes it subject to the right of the court, which established its probate, likewise to revoke it, if adjudged to be founded in error, fraud or mistake. The *status* of the *res*, in such event, must necessarily be determined by the local jurisdiction which had authority over the subject-matter. The court in Louisiana possessed the same authority to revoke the probate of the will, as to establish it. Constructive service was all that could be given, in view of the non-residence of the defendants in the proceeding. If the *forum rei sitæ* proceeded according to its own laws governing such notice, it is all that we can require. This seems to have been done in the appointment of a *curator ad hoc*, to appear and represent the interests of the non-resident litigants, according to the practice of the civil law, which is a substitute, as we take it, for our method of publication.—Cooley's Const. Lim. 499–500; Freeman on Judg. §§ 606, 607, 608, 612; 2 Brick. Dig. 159, §§ 38, *et seq.; Kumpe v. Coons*, 63 Ala. 448.

For the error of the Circuit Court in refusing the appellant's

[Turner v. Wilkinson.]

demand for a jury trial, the judgment must be reversed, and the cause remanded, although in other respects its rulings are, in our opinion, entirely free from error.